## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| WEIHAI ZHUANG, | ) | |
| | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAM BONDI, Attorney General | ) | No. 1:25-cv-00201-CMS |
| of the United States, | ) | |
| et al., | ) | |
| | ) | |
| | ) | |
| *Respondents*. | ) | |
| | ) | |

## MEMORANDUM AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Weihai Zhuang, a citizen of China, has lived in the United States since 2023 but has never been lawfully admitted into the country. (Doc. 1 at 3-5). He is currently detained awaiting immigration proceedings. (Doc. 1 at 1). Zhuang petitions the Court for a writ of habeas corpus, asking the Court to order Respondents (collectively, "the Government") to either release him or give him an individualized bond hearing, in addition to other relief. (Doc. 1 at 12-14).[1] Zhuang argues his stop and arrest violate the

---

[1] On January 30, 2026, Zhuang filed a "Motion to Expedite Consideration of Petition for Writ of Habeas Corpus." (Doc. 15). This document appears to be an unedited motion template, which does not specify where Petitioner is detained or the basis for relief. (Doc. 15 at 1) ("Petitioner remains detained at [facility]. Each day of delay perpetuates the alleged unlawful detention and constitutes irreparable harm. The Petition challenges detention based on [warrantless arrest / lack of § 1226(a) bond hearing / unlawful transfer / deficient documentation under § 1357(a)(2)]). Counsel should avoid future such lapses, which may result in sanctions, including dismissal of Petitioner's petition, without further notice.

Fourth Amendment, and his detention and transfer to another facility violate the Due Process Clause of the Fifth Amendment. Regarding Zhuang's detention, the parties disagree over which section of Title 8 governs, Section 1225(b)(2) or Section 1226(a). If Section 1225(b)(2) governs, then the Government must detain Petitioner without bond. If Section 1226(a) governs, then an individualized bond hearing may be permitted in some circumstances.

For the reasons stated below, Zhuang's stop and arrest do not violate the Fourth Amendment. Section 1225(b)(2) dictates the outcome of this case and requires detention of Petitioner Zhuang without bond pending his immigration proceedings. Zhuang's detention and transfer to another facility also do not violate due process. The Court denies the petition for a writ of habeas corpus. (Doc. 1).

## Factual Background

Zhuang is neither a citizen nor a national of the United States. (Doc. 1 at 4-5). He is a citizen of China. *Id.* He entered the United States without inspection in September 2023 and has been in the United States ever since. *Id.* at 5. On September 4, 2023, DHS issued Zhuang a Notice to Appear. *Id.* Zhuang filed an asylum application in April 2024 and has appeared before the "Immigration Court" in Chicago several times. *Id.* at 6. In August 2025, DHS granted Zhuang's Employment Authorization Documentation application. *Id.* at 6.

Immigration and Customs Enforcement detained Zhuang on November 6, 2025, and he has been in custody since that date. *Id.* at 2. According to Zhuang's petition, he was stopped by agents while driving to work, "despite committing no traffic violation

and displaying no criminal conduct." (Doc. 1 at 7).

The Government disputes this characterization of Zhuang's arrest. The arresting agent alleges that he approached Zhuang and multiple other male suspects in a patrol vehicle. (Doc. 10-1 at 3). After the arresting agent identified himself as a Border Patrol Agent, Zhuang and the other male suspects attempted to flee. (Doc. 10-1 at 3). Zhuang admitted to the arresting agent that he was "illegally present in the United States" and he was placed under arrest. (Doc. 10-at 3).

After being detained for two days in Chicago, Zhuang was transferred to the Ste. Genevieve, Missouri, Detention Center. *Id.* at 1, 6. Zhuang remained there at the time his petition was filed. *Id.*

Zhuang filed this petition on November 22, 2025, asserting that his arrest, detention, and transfer to another facility violate the Fourth Amendment, his right to due process under the Fifth Amendment, and the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq. Id.* at 2. He requests the following relief: an order granting his immediate release; or, in the alternative, a bond hearing before an immigration judge; a declaration that his warrantless arrest was unlawful; an order enjoining the Government from continuing detention unless "lawful procedures are followed"; and costs and attorney's fees pursuant to 28 U.S.C. § 2412. *Id.* at 13–14.

## Analysis

### *Petitioner's Warrantless Stop and Arrest Were Lawful (Count I).*

8 U.S.C. § 1357(a)(2) authorizes warrantless arrests by a Border Patrol agent if the agent "has reason to believe that the alien so arrested is in the United States in violation of

any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." "Because the Fourth Amendment applies to arrests of illegal aliens, the term 'reason to believe' in § 1357(a)(2) means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).[2]

The I-213 form included in the record was filled out the day after Zhuang's arrest and contains substantial factual information about the arrest. (Doc. 10-1). In contrast, Zhuang's petition briefly and only vaguely states the facts underlying Zhuang's arrest and omits the fact that Zhuang attempted to flee from Border Patrol agents. (Doc. 1). Importantly, after the Government filed the I-213 form (Doc. 10-1), Zhuang has changed his story. Despite Zhuang's allegation that his stop violated the Fourth Amendment, he now admits that, only when he stopped at the house to which he was driving to pick up five co-workers, a black SUV pulled up in front of his car. (Doc. 14 at 3). He also admits that he then ran but now claims he feared for his safety. (Doc. 14 at 3). Thus, the uncontroverted record establishes that Zhuang's vehicle was not stopped by Government agents and that Zhuang fled when approached by agents.

Here, Zhuang admitted to the arresting agent that he was not legally present in the United States. (Doc. 10-1 at 3). Therefore, the arresting agent had "reason to believe" that

---

[2] In his Reply to the Government's Response, Zhuang argues that his warrantless arrest violates the consent decree in *Castañon Nava v. Dep't. of Homeland Sec.*, 2025 WL 2842146 (N.D. Ill. Oct. 7, 2025). *Castañon Nava* does not apply to § 2241 habeas petitions. *See Gonzalez v. Dunbar*, 2025 WL 3534108 at *9 (W.D. Mich. Dec. 10, 2025) ("Based on the decision in *Castañon Nava*, release from custody without bond may be an appropriate form of relief in an action *outside of habeas* for violation of the consent judgment.") (emphasis in original).

Zhuang was "in violation of [a] law or regulation." *See United States v. Puebla-Zamora*, 996 F.3d 535, 538 (8th Cir. 2021).

The arresting agent also had "reason to believe" that Zhuang was "likely to escape before a warrant can be obtained for his arrest." When the arresting agent approached Zhuang and identified himself as a Border Patrol agent, Zhuang attempted to flee. (Doc. 10-1 at 3). Again, Zhuang now admits that he attempted to flee. (Doc. 14 at 3). Zhuang also ignored other commands. (Doc. 10-1 at 3). Given that Zhuang attempted to run from Border Patrol and ignored Border Patrol commands, the arresting agent had probable cause to believe that Zhuang was a flight risk.

The warrantless arrest of Zhuang was lawful. Count I is DENIED.

*8 U.S.C. § 1225 Applies to Petitioner (Count II).*

As the Supreme Court has noted, "'[h]abeas is at its core a remedy for unlawful executive detention.'" *Dept. of Homeland Sec'ty v. Thuraissigiam*, 591 U.S. 103, 119 (2020) (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)) (alteration in original). Petitioner Zhuang asks the Court to order his release or, alternatively, that he be granted an individualized bond hearing. (Doc. 1 at 2-3).

The dispositive question is whether Section 1225(b)(2) or Section 1226(a) governs Zhuang's detention. While the latter section generally permits bond, the former does not: "aliens falling within the scope of § 1225(b)(2) 'shall be detained for a [removal] proceeding.'" *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (quoting 8 U.S.C. § 1225(b)(2)) (alteration in original).

The Government argues that Section 1225(b)(2) applies in this case. That section

5

requires, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). According to the United States Supreme Court, "[r]ead most naturally, §§ 1225(b)(1) and (b)(2) . . . mandate detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297.

By contrast, Zhuang argues that Section 1226(a) applies. (Doc. 14 at 7). Section 1226(a) provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Section 1226(a)(2)(A) further allows that the Attorney General "may" release the alien on bond. *Jennings*, 583 U.S. at 303 ("Section 1226(a) also permits the Attorney General to release those aliens on bond").

When interpreting a statute, the Court begins "with the statute's plain language, giving words the meaning that proper grammar and usage would assign them." *Union Pac. R.R. Co. v. Surface Transp. Bd.*, 113 F.4th 823, 833 (8th Cir. 2024) (quotation omitted). But "[w]hen a statute includes an explicit definition of a term, we must follow that definition, even if it varies from a term's ordinary meaning." *Van Buren v. United States*, 593 U.S. 374, 387 (2021) (quotation omitted).

Under Section 1225(b)(2), when an alien is "an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." The question is

whether Zhuang is an "applicant for admission" as defined by Section 1225, as he does not assert that an immigration officer determined that he is "clearly and beyond a doubt entitled to be admitted."

Under Section 1225(a)(1), "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." Zhuang is an "alien" because he is a citizen of China. (Doc. 1 at 4). He is, admittedly, present in the United States. *Id.* at 6. He "has not been admitted" according to Section 1225(a)(1) because he did not "lawful[ly] ent[er] . . . into the United States after inspection and authorization by an immigration officer," Section 1101(a)(13)(A) (defining "admission" and "admitted"). The Supreme Court in *Jennings*, 583 U.S. at 287, noted that, under Section 1225, "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" Thus, according to the plain language of the statute, Zhuang is "an applicant for admission," Section 1225(b)(2)(A) applies, and he is not entitled to a bond hearing.

Four other cases in this District recently addressed precisely this issue and reached the same result. *See Mejia Olalde v. Noem*, No. 1:25-CV-00168-JMD, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025); *Suarez v. Noem*, No. 1:25-CV-00202-JMD, 2025 WL 3312168 (E.D. Mo. Nov. 28, 2025); *Cutiopala v. Noem*, 2026 WL 113567 (E.D. Mo. Jan. 15, 2026); *Negrete Ramirez v. Noem*, 2026 WL 251725 (E.D. Mo. Jan. 30, 2026) (Stevens, J.).

Other courts to consider the issue, but not all, likewise have decided that Section

1225(b)(2) applies. *See Buenrostro-Mendez v. Bondi,* No. 25-20496 (5th Cir. Feb. 6, 2026); *Chavez v. Noem*, 801 F.Supp.3d 1133, 1140 (S.D. Cal. 2025); *but see Eshdavlatov v. Arnott*, No. 25-00844, 2025 WL 3217838 (W.D. Mo. Nov. 18, 2025). Recently, the Board of Immigration Appeals also interpreted Section 1225(b)(2) to apply to an alien who had resided in the United States for over two years. *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 228 (BIA 2025). Applying Section 1225(b)(2), the Board determined that an immigration judge lacked authority to hold a bond hearing for that alien. *Id.* Having already reached this conclusion in *Negrete Ramirez*, the Court again holds that Section 1225(b)(2) applies in this circumstance.

As the *Mejia Olalde* court concluded, "to 'seek' is a synonym of to 'apply' for." *Id.* at *3 (citing *Apply (for)*, Merriam-Webster, https://www.merriam-webster.com/thesaurus/apply%20for (last visited Nov. 6, 2025)). As already stated, Zhuang definitionally is an "applicant for admission" under Section 1225(a)(1). As an "applicant for admission," Zhuang is also "seeking admission" within the meaning of Section 1225(b)(2)(A). This is so despite that Congress used slightly different terminology with the phrases "seeking admission" and "applicant for admission." *See Mejia Olalde*, 2025 WL 3131942, at *3 (quoting William N. Eskridge, Jr., *Interpreting Law: A Primer on How to Read Statutes and the Constitution* 111 (2016) ("reasoning that 'meaningful variation of terminology within a statute ought not be as powerful a consideration as ordinary meaning' and concluding that 'the Legislature is not required to be overly repetitive in its choice of language'").

Also, under Section 1225(a)(3), titled "Inspection," "[a]ll aliens . . . who are

applicants for admission or *otherwise* seeking admission . . . shall be inspected by immigration officers" (emphasis added). The implication of the word "otherwise," which is defined as "1: in a different way or manner: DIFFERENTLY," *Otherwise*, *Webster's Third New International Dictionary* (2002), is that being an applicant for admission is another way of "seeking admission." Thus, the context of Section 1225 also supports the interpretation of "applicant for admission" as synonymous with an alien "seeking admission." *See Mejia Olalde*, 2025 WL 3131942, at *3.

Further, Section 1225(b)(2) includes no time limit. If Congress intended that an alien no longer is "seeking admission" after some amount of time in the United States, it could have said so. *See id.* at *4. As in *Mejia Olalde*, this Court will not insert into a statute an "arbitrary time limit" where none is provided. *Id.* (quoting *Jennings*, 583 U.S. at 304).

For all of these reasons, Section 1225(b)(2) applies, and Petitioner Zhuang must be detained pending removal proceedings.

*Petitioner's Detention Does Not Violate*
*the Fifth Amendment to the United States Constitution (Count II).*

Zhuang briefly argues for a declaratory judgment that his detention without an individualized custody determination violates the Due Process Clause of the Fifth Amendment. (Doc. 1 at 8-10). Though the Due Process Clause applies to aliens "whether their presence here is lawful, unlawful, temporary, or permanent," *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), the Supreme Court has approved mandatory detention of deportable criminal aliens pending removal proceedings, *Demore v. Kim*,

538 U.S. 510, 527–28 (2003).

Petitioner's argument relies heavily on the Supreme Court's decision in *Zadvydas*, 533 U.S. at 690. (Doc. 1 at 8). But *Zadvydas* is distinguishable here on the same basis the Supreme Court distinguished it in *Demore*, 538 U.S. at 527–28. In *Zadvydas*, unlike here and in *Demore*, the Court dealt with the possibly indefinite detention of an alien whose "removal was 'no longer practically attainable.'" *Id.* at 527 (quoting *Zadvydas*, 533 U.S. at 690).

Though *Demore* involved mandatory detention of a criminal alien under Section 1226(c), its rationale holds true in this case. First, this Court is following the mandate of Congress in Section 1225 that "applicants for admission" shall be detained. *See* 8 U.S.C. § 1225(b)(2); *see also Demore*, 538 U.S. at 528. Second, like *Demore* and unlike *Zadvydas*, Zhuang's detention pending removal proceedings will be of a short duration and certainly is not "'indefinite' and 'potentially permanent.'" *Demore*, 538 U.S. at 528. Thus, here, as in *Demore*, "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531. The Government has not denied Petitioner due process by detaining him without a bond hearing pending removal proceedings.

Count II is DENIED.

*Zhuang's Transfer Does Not Violate the Fifth Amendment (Count III).*

Finally, Zhuang alleges that his transfer to the Ste. Genevieve, Missouri, detention facility is "constitutionally defective as Petitioner is being denied a full and fair hearing on his asylum application when the DHS denies his access to his counsel

by detaining him hundreds of miles away from his attorney." (Doc. 1 at 13). The "due process clause is not implicated when a pretrial detainee is transferred from one prison to another." *Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir. 1993) (citing *Covino v. Vermont Dept. of Corrections*, 933 F.2d 128, 130 (2d Cir.1991)). A "detainee's constitutional rights may be infringed where the transfer interferes with his right to assistance of counsel," but "evidence of actual prejudice is necessary to show interference with the right to counsel." *Id.* (citing *United States v. Lyons*, 898 F.2d 210, 216 n. 6 (1st Cir. 1990). Zhuang does not identify any evidence of actual prejudice in his petition, instead claiming that his transfer "severely hindered attorney-client communication, document exchange, hearing preparation, and interpreter access." (Doc. 1 at 11). These conclusory statements fall short of establishing actual prejudice. *See Miranda v. Nielsen*, 2009 WL 10678167 at *4 (D. Ariz. Aug. 28, 2009) ("Petitioner's claim that the move interferes with her access to counsel is conclusory, especially in view of her claim that the Petition can be dealt with expeditiously once Respondents have answered.").

Count III is DENIED.

## Conclusion

Petitioner Zhuang's arrest did not violate the Fourth Amendment, and his detention is mandated by Section 1225(b)(2). Neither his detention nor his transfer to another facility violates the Due Process Clause of the Fifth Amendment.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for a writ of habeas corpus (Doc. 1) is **DENIED**;

IT IS FURTHER ORDERED that Petitioner's Motion to Expedite (Doc. 15) is

**DENIED** as MOOT.

Dated this 9th day of February, 2026.

_____

CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE